United States Court of Appeals,

Fifth Circuit.

No. 94-40102

(Summary Calendar).

In the Matter of the Complaint of PORT ARTHUR TOWING CO. on Behalf of the M/V MISS CAROLYN for Exoneration from or Limitation of Liability.

PORT ARTHUR TOWING CO., etc., Plaintiff-Appellee,

v.

JOHN W. TOWING, INC., et al., Defendants,

Harris Jarreau, Defendant-Appellant,

and

Joshua Verdin, Defendant-Appellee.

In the Matter of JOHN W. TOWING, INC., as Owner and Operator of the M/V JOHN W., Praying for Exoneration from or Limitation of Liability.

JOHN W. TOWING, INC., etc., Plaintiff-Appellee,

v.

Gerald PREJEANT, et al., Defendants,

Harris Jarreau, Defendant-Appellant,

and

Joshua Verdin, Defendant-Appellee.

Jan. 18, 1995.

Appeal from the United States District Court for the Western District of Louisiana.

Before DUHÉ, WIENER and STEWART, Circuit Judges.

PER CURIAM:

A collision of two barge tows resulted in injuries to the vessels and some crew members. Owners and operators of the two

vessels involved in the collision filed suit under the Limitation of Liability Act (the "Act")[1] in federal district court seeking to limit their respective liabilities to the values of the respective vessels. The district court held that the shipowners were entitled to limit their liability and thus stayed concurrent state court actions involving the incident. The district court subsequently held, inter alia, that both shipowners were entitled to exoneration from liability to one of the claimants—Defendant-Appellant Harris Jarreau—as he had failed to prove medical causation, *i.e.,* that he was injured in the accident. Jarreau appealed, arguing that the court erred by (1) staying state court proceedings, and (2) concluding that both shipowners were entitled to exoneration from liability for his claims. Finding no error, we affirm.

I

FACTS AND PROCEEDINGS

Underway at night, the lead barge in the tow of the M/V MISS CAROLYN, a vessel owned by the Port Arthur Towing Company, Inc. ("PATCO"), rammed the stern of the M/V JOHN W., a vessel owned by John W. Towing, Inc. ("JWT"). As a result of this collision, several seamen, including Jarreau and Defendant-Appellee Joshua Verdin, both serving on the M/V JOHN W. at the time, filed suit in state court stating claims under the Jones Act and General Maritime Law for injuries that they allegedly suffered in the mishap.[2]

---

[1] 46 U.S.C. app. §§ 181-196 (1988).

[2] Claims also were made by Adam East, Jr. and Gerald Prejeant, Jr. PATCO, JWT, East and Prejeant reached a settlement, so their claims are not involved in this appeal.

In response, JWT and PATCO filed separate limitation complaints in federal district court, invoking that court's admiralty jurisdiction and praying for exoneration from or limitation of liability on claims arising from the collision. These actions were consolidated, after which JWT filed a cross claim against PATCO seeking indemnification, court costs, and attorneys' fees. All parties agreed to have the cases adjudicated by a magistrate judge.

A concursus was deposited into the registry of the district court, which then issued an order staying all related state court proceedings. Jarreau, Verdin, and JWT tried to negotiate a mutually agreeable stipulation that would enable Jarreau and Verdin to have the stay lifted and pursue their claims in state court. Agreement on a mutually acceptable stipulation could never be reached, however, so the three parties voluntarily abandoned their efforts to produce such a stipulation. Eventually Jarreau and Verdin—but not JWT—did enter into a stipulation, then moved the court to lift the order staying the state court actions. But as JWT was not a party to the agreement, the court denied this motion.

The district court conducted a hearing, at the conclusion of which it exonerated JWT from all liability and found PATCO solely responsible for the collision. The magistrate judge then determined after a bench trial that Jarreau had not proved that he sustained any injury as a result of the collision; thus PATCO was entitled to exoneration from Jarreau's claim.

The court found that, although Jarreau chronically suffers

3

from degenerative disc pathology, his condition did not result from the collision but antedated it. Dr. Edmund C. Landry, Jr., an orthopedic surgeon who examined Jarreau at the request of PATCO and JWT, stated that x-rays of Jarreau's back taken less than a month after the accident showed that the degenerative change predated the accident by more than a year and probably resulted from some prior trauma. Dr. John D. Jackson, Jarreau's treating physician who did not review the x-rays, could not say that the objective pathology was caused by the collision. Jarreau testified that he had no prior back problems and that his back started hurting either immediately or shortly after the accident.

After considering this evidence, the court concluded that "there is no objective evidence to aid the doctors in determining whether Jarreau, in fact, was injured in the accident at issue. This determination is totally dependent upon Jarreau's credibility when he says that he had no prior back problems but had the onset of pain either immediately or shortly after the accident." The court then considered evidence bearing on Jarreau's credibility.

In the court's recap of that evidence, it noted that (1) the captain of the M/V MISS CAROLYN testified that immediately after the accident Jarreau stated that he was not injured; (2) another crew member of the M/V MISS CAROLYN testified that Jarreau told him that he was not injured, but that he was going to sue anyway; and (3) four to five days after the accident Jarreau gave a statement in which he denied being injured. In addition to these statements, which were inconsistent with Jarreau's trial testimony, the court

4

noted that Jarreau's manner and demeanor on the witness stand weighed against his credibility. Accordingly, the court found Jarreau's testimony not credible and ruled that he had failed to establish that he was injured in the collision.

Jarreau appealed, contending that the court erred in denying his motion to lift the order staying the state court proceedings, and in finding that PATCO and JWT were entitled to exoneration from liability for his claims, because Jarreau had failed to prove that the collision caused his injuries.[3]

II

ANALYSIS

A. STAYING THE STATE COURT PROCEEDINGS

A shipowner facing potential liability for a maritime accident may file suit in federal court seeking protection under the Act, a statute that permits a shipowner to limit his liability for damages or injuries arising from a maritime accident to "the amount or value of the interest of such owner in such vessel, and her freight then pending,"[4] if the accident occurred without the shipowner's "privity or knowledge."[5] "When a shipowner files a complaint seeking limited liability, the federal district court stays all related claims against the shipowner pending in any forum, and requires all claimants to assert their claims in the limitation

---

[3]PATCO appealed too, contending that the district court erred in awarding $12,000 to another seaman; but PATCO's appeal was subsequently dismissed on PATCO's unopposed motion.

[4]46 U.S.C. app. § 183(a).

[5]*Id.*

court."[6]  This accords with the federal courts' exclusive jurisdiction of suits brought under the Act.[7]

Although it has granted such exclusive jurisdiction to the federal courts, Congress has also " "sav[ed] to suitors ... all other remedies to which they are otherwise entitled' " (the "saving-to-suitors clause").[8]  We have previously recognized that "this statutory framework has created "recurring and inherent conflict' between the saving-to-suitors clause, with its "presumption in favor of jury trials and common law remedies,' and the "apparent exclusive jurisdiction' vested in the admiralty courts by the Act."[9]  In connection with this tension, we have noted that "[t]he court's primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum."[10]

The Act therefore is directed at maritime misfortunes in which the losses claimed exceed the value of the vessel and its

---

[6]*Magnolia Marine Transp. v. Laplace Towing Corp.,* 964 F.2d 1571, 1575 (5th Cir.1992) (citing *In re Dammers & Venderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 755 (2d Cir.1988)).

[7]*See* 28 U.S.C. § 1333.

[8]*Magnolia Marine Transp.,* 964 F.2d at 1575 (quoting § 1333).

[9]*Id.* (quoting *In re Dammers & Venderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d at 754; *see Odeco Oil & Gas Co. v. Bonnette,* 4 F.3d 401, 404 (5th Cir.1993) (citing *Magnolia Marine Transport* ), *cert. denied,* --- U.S. ----, 114 S.Ct. 1370, 128 L.Ed.2d 47 (1994).

[10]*Magnolia Marine Transp.,* 964 F.2d at 1575 (citing *Langnes v. Green,* 282 U.S. 531, 543, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)).

freight.[11]   But when a shipowner is not exposed to potential liability in excess of that amount, the shipowner's absolute right to limit its liability is not implicated and "the saving-to-suitors clause dictates that the admiralty court *must* allow suits pending against the shipowner in a common law forum, in this case the state court, to proceed."[12]   Over the years, courts have identified several exceptional circumstances in which a district court must permit a state law action to proceed, even though a limitation action has been filed in federal court.   Today we must determine whether the district court was here faced with such a situation.

1. *When A Stay Is Appropriate*

As we recently explained, "[c]laims may proceed outside the limitations action (1) if they total less than the value of the vessel, or (2) if [all] claimants stipulate that the federal court has exclusive jurisdiction over the limitation of liability proceeding and that [the claimants] will not seek to enforce a greater damage award until the limitation action has been heard by the federal court."[13]   In this case, multiple claimants sought more in damages than the total value of the vessels and their pending cargo;   thus, to proceed in state court, all claimants were first

---

[11]*Id.* (citing *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 151, 77 S.Ct. 1269, 1271, 1 L.Ed.2d 1246 (1957)).

[12]*Id.* (citing *Lake Tankers Corp.,* 354 U.S. at 150-54, 77 S.Ct. at 1271-73).

[13]*Odeco Oil & Gas Co.,* 4 F.3d at 404 (citing *Lake Tankers Corp.,* 354 U.S. at 151-53, 77 S.Ct. at 1271-72);   *see In re Two "R" Drilling Co.,* 943 F.2d 576, 578 (5th Cir.1991) (analyzing sufficiency of claimants' stipulations).

required to enter into a stipulation that would protect the shipowner's right to limit its liability.

2. *Adequacy of the Stipulations*

The district court denied Jarreau's motion to lift the order staying his state court action, finding that the claimants had not entered into a stipulation sufficient to protect PATCO's interests. Jarreau argues that this was error, insisting that both he and Verdin, the only other crew member remaining in the suit at that time, had proposed an adequate stipulation.

But the record is clear that the stipulation proposed by Jarreau and Verdin was inadequate to protect PATCO's right to limit its liabilities: That agreement would not have bound all necessary parties. Even though they eventually agreed between themselves to the terms of a proposed stipulation, Jarreau and Verdin never convinced JWT to enter into it. Yet JWT was a codefendant with a cross claim against PATCO seeking damages, attorneys' fees and costs. Indeed, the fact that Jarreau, Verdin, and JWT were unable to arrive at an acceptable stipulation among themselves was confirmed when they informed the district court that they had abandoned all efforts to obtain a mutually agreeable stipulation, after which Jarreau and Verdin proceeded to try their cases before that court.

On this point the law is clear: When the aggregate of the damages being sought by all claimants exceeds the value of the concursus, actions in state court cannot proceed unless *all* claimants enter into a stipulation that adequately protects the

8

shipowner which has filed a complaint in federal court seeking to limit its liability.[14] We recently stated that a "claimant" in this context includes a codefendant who is asserting a cross claim for indemnification, costs, and attorneys' fees.[15] As none dispute that JWT was doing precisely that, or that JWT refused to enter into a stipulation with Jarreau and Verdin, PATCO would have been exposed to a multiple claimant/inadequate fund situation had Jarreau been permitted to pursue his action in state court.[16] Clearly, then, the trial court would have abused its discretion had it lifted its earlier order staying Jarreau's state court proceeding.[17] In sum, not only was the district court's decision to deny Jarreau's motion to lift the stay entirely proper, it was required by law.

B. JARREAU'S INJURY: MEDICAL CAUSATION

Jarreau argues that the district court's exoneration of both PATCO and JWT from liability for Jarreau's injury must be reversed.

---

[14] *See Odeco Oil & Gas Co.,* 4 F.3d at 405 n. 7.

[15] *Id.* at 405 (vacating and remanding stay of limitation proceeding so that the district court could consider implications of codefendant's potential cross claim for contribution or indemnification); *see also Gorman v. Cerasia,* 2 F.3d 519, 525 (3d Cir.1993) ("[A]ll courts have recognized that a multiple claimant situation exists where a third party seeking indemnity or contribution also requests attorneys' fees and costs associated with its claim.").

[16] *Odeco Oil & Gas Co.,* 4 F.3d at 405; *Gorman,* 2 F.3d at 525.

[17] *See Gorman,* 2 F.3d at 523 ("[W]here a shipowner demonstrates that his or her right to limit liability would be prejudiced, the court's lifting of the stay constitutes an abuse of discretion.") (citing *Universal Towing Co. v. Barrale,* 595 F.2d 414, 420 (8th Cir.1979) and *S & E Shipping Corp. v. Ohio Ry. Co.,* 678 F.2d 636, 647 (6th Cir.1982) (Kennedy, J., concurring)).

He urges that court made errors of fact and law. "We independently review a district court's conclusions of law. We may reverse its findings of fact, however, only if we determine that they were clearly erroneous."[18] We consider whether Jarreau proved that the collision caused his back injury, entitling him to receive compensation from the concursus.

As noted earlier, a limitation proceeding generally comprises a two-step process,[19] the first being "the establishment of liability of the shipowner to the claimant, as to which the claimant (or libellant) bears the burden."[20] "The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited. If no liability exists there is nothing to limit."[21] Thus Jarreau was required initially to prove facts

---

[18]*Brister v. A.W.I., Inc.,* 946 F.2d 350, 354 (5th Cir.1991).

[19]*See generally* THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 15-5, at 305-06 (2d ed. 1994) (describing typical limitation proceeding).

[20]GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY 895 (2d ed. 1975); *see In re Hechinger,* 890 F.2d 202, 207 (9th Cir.1989) (stating that in a limitation proceeding, the claimant bears the initial burden of showing that "[a] *liability* ... exist[s]" (emphasis added)), *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); *The 84-H,* 296 F. 427, 431-32 (2d Cir.1923) ("[I]n a proceeding to limit liability ... the first [duty] is to ascertain whether any *liability* exists." (emphasis added)), *cert. denied,* 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867 (1924); *In re Lloyd's Leasing Ltd.,* 764 F.Supp. 1114, 1141 (S.D.Tex.1990) ("Liability is the threshold issue to be resolved in a limitation of liability action because the exploration as to limitation is materially relevant only if liability is established.").

[21]*The 84-H,* 296 F. at 431; *accord In re Hechinger,* 890 F.2d at 207 (9th Cir.1989) (quoting *Northern Fishing & Trading Co. v. Grabowski,* 477 F.2d 1267, 1272 (9th Cir.) (quoting *The 84-H* ), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485

supporting his claim that PATCO was liable to him for his alleged injury.[22]

The trial court concluded that PATCO was entitled to exoneration from liability to Jarreau because he failed to prove that the collision played any part, however small, in causing his injury. Jarreau challenges that finding. We review the court's finding for clear error.[23]

In cases involving issues of medical causation, it is not the function of a court to search the record for conflicting circumstantial evidence which supports alternative theories of

---

(1973)); *see Colonial Sand & Stone Co. v. Muscelli,* 151 F.2d 884, 885 (2d Cir.1945) ("The right to limit is quite separate from the validity of the claim; indeed it is of no value unless the claim is valid."); *cf. Board of Comm'rs v. M/V FARMSUM,* 574 F.2d 289, 297 (5th Cir.1978) (in context of the rule of *The Pennsylvania,* "fault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract").

[22]*See Cupit v. McClanahan Contractors, Inc.,* 1 F.3d 346, 348 (5th Cir.1993) ("Once an injured seaman has established that his employer's negligence *caused his injuries,* a vessel owner seeking limitation of liability must prove that it lacked privity or knowledge of the negligence." (emphasis added)), *cert. denied,* --- U.S. ----, 114 S.Ct. 1058, 127 L.Ed.2d 378 (1994); *Brister,* 946 F.2d at 355 ("In a limitation proceeding, once an injured seaman establishes that negligence or unseaworthiness *caused his injuries,* the burden shifts to the vessel owner...." (emphasis added)); *see, e.g., In re Lloyd's Leasing Ltd.,* 764 F.Supp. at 1141-42.

[23]*Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008, 1019 (5th Cir.1994) (citing *Gavagan v. United States,* 955 F.2d 1016, 1019 (5th Cir.1992)); *see Marathon Pipe Line Co. v. M/V SEA LEVEL II,* 806 F.2d 585, 592 (5th Cir.1986); *see, e.g., Mars v. United States,* 25 F.3d 1383, 1384 (7th Cir.1994) (reviewing for clear error finding of no medical causation).

causation.[24] Jarreau presented his own live testimony and the deposition of his treating physician, Dr. Jackson. Jarreau testified that he had no prior back problems and that his back started hurting either immediately or shortly after the collision occurred. Jarreau's expert, Dr. Jackson, stated that Jarreau does suffer from a back injury, but he (Dr. Jackson) could not tell if the injury resulted from the collision.

PATCO and JWT also presented an expert witness, Dr. Landry, who had personally examined Jarreau and reviewed x-rays of Jarreau's back that were taken only one month after the accident. The x-rays satisfied Dr. Landry that Jarreau had a degenerative disc disease and that the disease was caused by trauma. But Dr. Landry was also convinced that the trauma and the condition it caused predated the collision. Thus there was expert testimony that the collision did not cause Jarreau's condition but no such testimony that it did.

The district court observed that "there is no objective evidence to aid the doctors in determining whether Jarreau, in fact, was injured in the accident at issue." Thus, stated the court, the answer to the question whether Jarreau was injured as a result of the collision "is totally depend[ent] upon Jarreau's credibility when he says he had no prior back problems but had an onset of pain either immediately or shortly after the accident." Continuing, the court noted that two crew members of the M/V MISS

---

[24]*See Sentilles v. Inter-Caribbean Corp.,* 361 U.S. 107, 110, 80 S.Ct. 173, 175, 4 L.Ed.2d 142 (1959); *Cella v. United States,* 998 F.2d 418, 428-29 (7th Cir.1993) (explaining *Sentilles* ).

12

CAROLYN testified that immediately after the accident Jarreau told them that he was not injured; and, within a week after the accident Jarreau himself gave a statement in which he denied having been injured in the collision. Based on Jarreau's conflicting statements and his manner and demeanor on the stand, the court expressly concluded that Jarreau's testimony regarding his injury was not credible. The court found as a matter of fact that the collision played no part whatsoever in injuring Jarreau.

As the trial court noted, the record contains no extrinsic, objective evidence proving precisely when or how Jarreau was injured. The court thus was faced with two equally plausible but diametrically opposed possibilities: Jarreau was injured in the collision or he was not. Based largely on its assessment of Jarreau's credibility, the district court found that Jarreau was not injured in the accident. Under the totality of the evidence, we cannot say that this was clear error, particularly when reviewing this finding under the highly deferential standard applicable to credibility calls by the trier of facts.[25]

"Weighing conflicting evidence and inferences and determining the relative credibility of witnesses to resolve factual disputes is the [factfinder's] province."[26] "Its decisions must be accepted if the record contains "competent and substantial evidence fairly

---

[25]*U.S. Fire Ins. Co. v. Allied Towing Corp.,* 966 F.2d 820, 824 (4th Cir.1992) ("Because the determination by the district court was based upon assessments of credibility, it is deserving of the highest degree of appellate deference.").

[26]*Turnage v. General Elec. Co.,* 953 F.2d 206, 207 (5th Cir.1992).

13

tending to support the verdict ... even if different inferences and conclusions also might be supported by the evidence.' "[27]  In fact, the Supreme Court has admonished that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."[28]  That is why we previously have written that if "[t]he district court's finding is based in part on its assessment of the credibility of the witness[ ], we will not depart from such an assessment except in the very rarest of circumstances."[29]  This case presents no such circumstances.[30]

Jarreau appeals an evidentiary ruling of the district court that excluded evidence of medical records.  Jarreau raises this issue in his opening brief, but he fails to make the argument.  A question posed for appellate review but not argued in the opening

---

[27]*Id.* (quoting *Dartez v. Fibreboard Corp.,* 765 F.2d 456, 469 (5th Cir.1985)).

[28]*Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

[29]*Travelers Indem. Co. v. Calvert Fire Ins. Co.,* 798 F.2d 826, 836 (5th Cir.1986).

[30]Because we conclude that Jarreau failed to prove causation and thus the district court properly concluded that PATCO and JWT were entitled to exoneration from liability for his claim, we need not decide whether that court also properly decided that both shipowners were entitled to limit their liability. *See The 84-H,* 296 F. 427, 431–32 (2d Cir.1923) ("If no liability exists there is nothing to limit."), *cert. denied,* 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867 (1924).

brief is waived.[31]

### III

### CONCLUSION

The district court did not err in denying Jarreau's motion to lift its order staying his state court proceeding. Furthermore, the district court did not err in ruling that both shipowners were entitled to exoneration from liability for Jarreau's injury based on its finding that Jarreau failed to prove that the collision caused his injury.

AFFIRMED.

---

[31]*United Paperworks Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252, 1255 (5th Cir.1990); *Harris v. Plastics Mfr. Co.*, 617 F.2d 438, 440 (5th Cir.1980).