United States Court of Appeals,

Eleventh Circuit.

No. 95-2272.

In the Matter of Petition of BEISWENGER ENTERPRISES CORP., Plaintiff-Appellant,

v.

Kathleen CARLETTA, Pauline Walls, Shante Myers, Yolanda Williams, Julian Myers, Estate of George Myers, George E. Myers, Jr., Claimants-Appellees.

June 27, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-149-CIV-T-17C), Elizabeth A. Kovachevich, Chief Judge.

Before ANDERSON and BLACK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Beiswenger Enterprises Corporation ("BEC"), the owner of the M/V "Skyrider Express," brought this admiralty action under the Limitation of Vessel Owner's Liability Act, 46 App.U.S.C. § 181 *et seq.* (the "Limitation Act"). This statute, originally enacted by Congress in 1851, limits a vessel owner's liability for any damages arising from a maritime accident to the value of the vessel and its freight, provided that the accident occurred without such owner's "privity or knowledge." 46 App.U.S.C. § 183(a). [1]

---

[1] 46 App.U.S.C. § 183(a) provides:

> The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in

When BEC filed its petition seeking limited liability, the district court enjoined the institution or prosecution of other suits against BEC pending the outcome of the limitation proceeding. *See* Fed.R.Civ.P. Supplemental Rule F(3). The damage claimants, appellees herein, filed a motion in the district court to stay BEC's limitation action and to lift the injunction against their state court tort action. The district court granted the damage claimants' motion, after accepting certain stipulations from the damage claimants designed to protect the vessel owner's rights under the Limitation Act. BEC appeals, contending that the amended stipulations filed by the damage claimants are inadequate. In this opinion, we address two primary issues. First, we address the viability in this Circuit of the procedure which allows the damage claimants in a multiple-claims-inadequate-fund case to proceed against the vessel owner outside the admiralty court upon the filing of appropriate protective stipulations. Second, we address whether the amended stipulations filed by the damage claimants in this case adequately protect BEC's rights under the Limitation Act.

## I.

On December 4, 1990, George Edward Myers and his fiancee Kathleen Carletta hired BEC to take them parasailing near Clearwater Beach, Florida. Parasailing is a recreational boating activity in which the riders, secured to the boat by a tow line, are pulled aloft by a parachute. Myers and Carletta boarded BEC's motor vessel, the "Skyrider Express," and they proceeded into the Gulf of Mexico. As the Skyrider Express maneuvered through the

---

such vessel, and her freight then pending.

water, the parachute canopy filled with wind, lifting Myers and Carletta into the air. At the conclusion of the ride, weather conditions interfered with the boat operator's efforts to retrieve the parasailors from the air. The operator severed the tow line connecting the vessel to the riders, causing them to descend to the water. After Myers and Carletta splashed down, the parachute canopy again filled with a gust of wind and rose into the air. Somehow, the tow line had become entangled around one of Myers' ankles, causing the parachute to pull him, hanging upside down, toward the sky. As the parachute passed over land, Myers slammed into several shoreside objects, and sustained serious injuries from which he died fourteen days later.

Anticipating liability for this event, BEC brought this action on February 6, 1991, seeking exoneration from or limitation of liability with respect to any claims arising out of the parasailing incident. BEC asserted that it was not at fault for the accident, and that the accident occurred without its privity or knowledge. On March 15, 1991, the district court approved BEC's security bond and *ad interim* stipulation of $40,090.00 as the value of the M/V Skyrider Express and its freight, and enjoined the institution or further prosecution of any suits against BEC or the M/V Skyrider Express in any other forum. *See generally* 46 App.U.S.C. § 185; Fed.R.Civ.P. Supplemental Rule F. The district court also issued a published notice directing all potential claimants to file their claims in the admiralty court by April 15, 1991.

On April 12, 1991, Carletta filed a claim for damages for her personal injuries, and, in an answer to BEC's limitation complaint,

disputed BEC's allegations on the central issues of fault and privity or knowledge. The estate of Myers and two of Myers' surviving minor children, Shante Denise Myers and Julian Caesar Myers, also answered BEC's complaint and filed a damages claim.[2]

More than a year later, in July 1992, Carletta and Myers' estate filed an action for personal injury and wrongful death in Florida state court against the following parties: Parasailing Enterprises, Inc. and Controlled Parasailing Corporation of America, the manufacturer and seller of the parasailing equipment; Mark McCulloh, an employee of Parasailing Enterprises and/or Controlled Parasailing; Roy F. Beiswenger, the operator of the Skyrider Express at the time of the accident; and William J. Beiswenger, the parasailing instructor and trainer. Because this state court complaint did not name BEC as a party, the district court refused to enjoin its prosecution.[3]

At some point, appellees decided that they wanted to add BEC as a party to the pending state court action. On September 14,

_____

[2]Myers was also survived by two other minor children: George Edward Myers, Jr. and Tiffany E.M. Carter (who was later renamed Tiffany Myers). These children, through their guardians, eventually joined the limitation action and adopted all the pleadings of the estate.

[3]According to BEC, William J. Beiswenger is the sole officer and shareholder of BEC. In the district court, BEC argued that by naming William J. Beiswenger as a party to the state court action, the damage claimants effectively violated the injunction restraining the institution of suits against BEC. *See Flink v. Paladini,* 279 U.S. 59, 62-63, 49 S.Ct. 255, 255, 73 L.Ed. 613 (1929) (holding that the stockholders of a corporation owning a vessel are entitled to invoke the Limitation Act). The district court rejected BEC's arguments without explanation, thus allowing the state court suit against William J. Beiswenger to proceed. BEC has not appealed from the district court's orders allowing William J. Beiswenger to be sued, and we do not address that issue.

1994, they filed a motion to stay the limitation of liability proceeding and to lift the injunction against suing BEC in state court. Appellees attached to this motion a series of stipulations designed to protect BEC's rights under the Limitation Act. The magistrate judge identified several perceived deficiencies in these stipulations, and recommended that the motion to lift the injunction be denied without prejudice. In response to the magistrate judge's concerns, appellees filed the following amended stipulations on October 6, 1994:

> AMENDED STIPULATIONS OF THE RESPONDENT/CLAIMANTS IN SUPPORT OF MOTION TO STAY LIMITATION OF LIABILITY ACTION AND TO LIFT INJUNCTION RESTRAINING ACTIONS AGAINST PETITIONERS
>
> Provided the Court lifts its Injunction of March 15, 1991 and stays this action to permit the Claimants to proceed against the Petitioner in a state court action for personal injury and wrongful death, the Respondent/Claimants, KATHLEEN CARLETTA and ELNORA MYERS, as Personal Representative of the Estate of George Edward Myers, stipulate and agree as follows:
>
> 1. That the Petitioner, BEISWENGER ENTERPRISES CORP., has the right to litigate the issue of whether it is entitled to limit its liability under the provisions of the Limitation of Liability Act, 46 U.S.C. § 181 et seq., in this Court, and this Court has exclusive jurisdiction to determine that issue.
>
> 2. That the Petitioner has the right to have this Court determine the value of the M/V Skyrider Express immediately following the incident at issue, and this Court has exclusive jurisdiction to determine that issue.
>
> 3. That the Respondent/Claimants will not seek a determination of the issues set forth in paragraphs (1) and (2) above in any state court, and consent to waive any res judicata effect the decisions, rulings or judgments of any state court might have on those issues.
>
> 4. That the Respondent/Claimants will not seek to enforce any judgment rendered in any state court, whether against the Petitioner or another person or entity that would be entitled to seek indemnity or contribution from the Petitioner, by way of cross-claim or otherwise, that would expose the Petition [sic] to liability in excess of $40,090.00, until such time as this Court has adjudicated the Petitioner's right to limit that liability.

5. That, in the event this Court determines that the Petitioner is entitled to limit its liability, the Respondent/Claimants agree that any claim based upon fees and/or costs awarded against Petitioner and in favor of any party in any state court proceeding will have first priority against the available fund.

6. That, in the event this Court determines that the Petitioner is entitled to limit its liability, the Respondents/Claimants agree that, following payment of the claims, if any, described in paragraph 5 above, the claim of ELNORA MYERS, as Personal Representative of the Estate of George Edward Myers, Deceased, shall have second priority against the limitation fund and priority over the claim of KATHLEEN CARLETTA.

R-2-81.

After reviewing these amended stipulations, the district court stayed the federal limitation proceeding and lifted the injunction, thus allowing appellees to proceed against BEC in state court. This appeal followed.

## II.

In the mid-nineteenth century, Congress passed the Limitation Act[4] "to encourage ship building and to induce capitalists to invest money in this branch of industry." *Norwich & N.Y. Transp. Co. v. Wright,* 80 U.S. (13 Wall.) 104, 121, 20 L.Ed. 585, 591 (1871). The Act achieves this purpose by "exempting innocent shipowners from liability, beyond the amount of their interest." *Id.* When faced with liability for a maritime accident, a vessel owner may file a petition in federal court seeking protection under the Limitation Act. Provided that the accident in question occurred without the vessel owner's "privity or knowledge," the Act limits the owner's liability to the value of his or her interest in

---

[4]Act of Mar. 3, 1851, ch. 43, 9 Stat. 635 (codified as amended at 46 App.U.S.C. §§ 181–189).

the vessel and its pending freight.  46 App.U.S.C. § 183(a).  After the vessel owner deposits with the court an amount representing the value of the vessel and its freight (the "limitation fund"), the district court stays all related claims against the vessel owner pending in any other forum, and directs all potential claimants to file their claims against the vessel owner in the district court within a specified period of time.  46 App.U.S.C. § 185; Fed.R.Civ.P. Supplemental Rules F(3), F(4);  *see In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 755 (2d Cir.1988);  *Universal Towing Co. v. Barrale,* 595 F.2d 414, 417 (8th Cir.1979).

When the damage claims have been filed, the district court proceeds to resolve the vessel owner's claim to limited liability. *See Dammers,* 836 F.2d at 755.  In a typical limitation proceeding, the court undertakes the following two-step analysis.  "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident.  Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1563-64 (11th Cir.1985) (quoting *Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir.1976)).  The damage claimants bear the initial burden of establishing liability, and the shipowner then bears the burden of establishing the lack of privity or knowledge.  *Id.*  If the vessel owner is found liable, but limitation is granted, the admiralty court distributes the limitation fund among the damage claimants in an equitable

proceeding known as a *concursus.* *See S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 643 (6th Cir.1982) ("The purpose of the *concursus,* the proceeding before the admiralty court in which all competing claims must be litigated, is to provide for a marshalling of assets and for a setting of priorities among claims where the asserted claims exceed the value of the vessel and its freight."); *In re Moran Transp. Corp.,* 185 F.2d 386, 389 (2d Cir.1950) ("[T]he purpose of limitation proceedings is not to prevent a multiplicity of suits but, in an equitable fashion, to provide a marshalling of assets—the distribution pro rata among claimants, none of whom can be paid in full."), *cert. denied,* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951).

Federal courts have exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability. *See Ex Parte Green,* 286 U.S. 437, 439-40, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932) (holding that the admiralty court's jurisdiction over issues bearing on the right to limited liability, such as "privity or knowledge," is exclusive); *Langnes v. Green,* 282 U.S. 531, 539-40, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931) (same); *In re Wood,* 230 F.2d 197, 199 (2d Cir.1956) ("[T]he issue of the owner's privity or knowledge must be litigated in the admiralty court, which has exclusive jurisdiction over that issue."). In limitation proceedings, as in all admiralty cases, there is no right to a jury trial. *See Waring v. Clarke,* 46 U.S. (5 How.) 441, 459, 12 L.Ed. 226, 235 (1847) (holding that the Seventh Amendment does not provide for jury trials in admiralty cases); *Newton v. Shipman,* 718 F.2d 959, 962 (9th Cir.1983) (per

curiam) (explaining that there is no right to jury trial in a limitation action).

However, the same statute that grants the federal courts exclusive admiralty and maritime jurisdiction saves to suitors "all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). This "saving to suitors" clause of § 1333 embodies a presumption in favor of jury trials and common law remedies in the forum of the claimant's choice. *See Odeco Oil & Gas Co., Drilling Div. v. Bonnette,* 74 F.3d 671, 674 (5th Cir.1996); *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 754 (2d Cir.1988). Thus, a certain tension between the exclusive jurisdiction vested in admiralty courts to determine the vessel owner's right to limited liability and the saving to suitors clause has developed. *See Dammers,* 836 F.2d at 754; *Jefferson Barracks Marine Serv., Inc. v. Casey,* 763 F.2d 1007, 1009 (8th Cir.1985) ("The conflict between the Limitation of Liability Act ... and the "saving to suitors' clause ... has been troublesome for the courts."). In resolving this tension, the "primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum." *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.,* 964 F.2d 1571, 1575 (5th Cir.1992); *see also Gorman v. Cerasia,* 2 F.3d 519, 526 (3d Cir.1993) (in applying the saving to suitors clause, the district court must "ensure that the shipowner will not be exposed to competing claims to the limitation fund").

Courts have attempted to give effect to both the Limitation Act and the saving to suitors clause whenever possible, by

identifying two sets of circumstances under which the damage claimants must be allowed to try liability and damages issues in a forum of their own choosing. The first circumstance arises where the limitation fund exceeds the aggregate amount of all the possible claims against the vessel owner. *See Lake Tankers Corp. v. Henn,* 354 U.S. 147, 152-53, 77 S.Ct. 1269, 1272-73, 1 L.Ed.2d 1246 (1957) (allowing damage claimants to proceed against shipowner in state court where stipulations reduced total of all claims to an amount below limitation fund). In such a case, the vessel owner is not exposed to liability in excess of the limitation fund, and thus the vessel owner's rights under the Limitation Act are not implicated. *Id.; see also S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 643 (6th Cir.1982) ("Where the limitation fund is sufficient to pay all potential claims ... a *concursus* is unnecessary because the claimants need not compete among themselves for larger portions of a limited fund. This exception to the *concursus* proceeding protects the claimant's right to a jury trial in the forum of his choice without undermining the Limitation Act's policy of limiting the shipowner's liability to the value of the vessel and its freight.").

The second circumstance exists where there is only one claimant. Because a major purpose of the *concursus* proceeding is to resolve *competing* claims to the limitation fund, the single claimant may try liability and damages issues in another forum by filing stipulations that protect the shipowner's right to have the admiralty court ultimately adjudicate its claim to limited liability. *See, e.g., Ex parte Green,* 286 U.S. 437, 438-40, 52

S.Ct. 602, 602-03, 76 L.Ed. 1212 (1932); *Langnes v. Green,* 282 U.S. 531, 540-44, 51 S.Ct. 243, 246-48, 75 L.Ed. 520 (1931). "Specifically, the claimant must waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court, and concede the shipowner's right to litigate all issues relating to limitation in the federal limitation proceeding." *Gorman v. Cerasia,* 2 F.3d 519, 524 (3d Cir.1993); *see also In re Midland Enter., Inc.,* 886 F.2d 812, 814 (6th Cir.1989) (explaining that the single claimant must formally concede the district court's exclusive jurisdiction to determine limitation of liability issues, that the value of the vessel and freight will be the limit of the fund available if limitation is granted, and that no res judicata arguments will be made based upon any state court judgment); *In re Mucho K, Inc.,* 578 F.2d 1156, 1158 (5th Cir.1978) (holding that "the claimant in a single claim situation after appropriate protective stipulations [may] proceed elsewhere reserving exclusive final determination of the right to limitation (and the amount of the fund) to the admiralty court") (quoting *Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546, 550 (5th Cir.1960)).[5]  If the state court (or the law side of the federal court) holds the vessel owner liable for the accident and assesses damages exceeding the limitation fund, the parties must return to the admiralty court for a determination of the privity or knowledge issues. *See Texaco, Inc. v. Williams,* 47 F.3d 765, 767

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

(5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 275, 133 L.Ed.2d 196 (1995); *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.,* 964 F.2d 1571, 1575 (5th Cir.1992) (explaining that "[t]he claimant must stipulate ... that no judgment against the shipowner will be asserted to the extent it exceeds the value of the limitation fund"); *Avera v. Florida Towing Corp.,* 322 F.2d 155, 159-60 (5th Cir.1963) (after a state court jury found the shipowner liable to the damage claimant, the parties returned to the admiralty court to determine whether any of the acts of negligence "which were submitted to and impliedly found by the state court jury" were committed without the privity or knowledge of the shipowner). If limitation is denied (e.g., because the vessel owner fails to establish a lack of "privity or knowledge"), the claimant may then enforce his or her state court judgment for damages exceeding the limitation fund. Accordingly, the shipowner's absolute right to claim limited liability, and to reserve the adjudication of that claim in the admiralty court, has been fully protected. *See Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.,* 964 F.2d 1571, 1575 (5th Cir.1992).

The instant case appears to present a "multiple-claims-inadequate-fund" situation. The "adequate fund" exception does not apply here, because the damage claimants each seek to recover amounts exceeding the value of the M/V Skyrider Express and its freight. Nor does the "single claimant" exception apply, because there are at least two separate claims for damages: the personal injury claim of Kathleen Carletta and the wrongful death claim of the estate of George Myers. In genuine

"multiple-claims-inadequate-fund" cases, the courts have not allowed damage claimants to try liability and damages issues in their chosen fora, even if they agree to return to the admiralty court to litigate the vessel owner's privity or knowledge. *See Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546, 549-50 (5th Cir.1960). This is because, without a *concursus* in the admiralty court, the claimants could "secure judgments in various courts that, in the aggregate, exceed the [limitation] fund." *Universal Towing Co. v. Barrale,* 595 F.2d 414, 418 (8th Cir.1979). Thus, the damage claimants in a true multiple-claims-inadequate-fund case may not proceed against the vessel owner except in the admiralty court.

In recent years, however, courts have allowed claimants to transform a multiple-claims-inadequate-fund case into the functional equivalent of a single claim case through appropriate stipulations, including stipulations that set the priority in which the multiple claims will be paid from the limitation fund. By entering such stipulations, the damage claimants effectively guarantee that the vessel owner will not be exposed to competing judgments in excess of the limitation fund. Without such competition for the limitation fund, a *concursus* is unnecessary, just as in a true single claimant case, and the claimants may litigate liability and damages issues in their chosen fora. *See Gorman v. Cerasia,* 2 F.3d 519, 526 (3d Cir.1993) ("[A]s long as the priority stipulations filed in the district court ensure that the shipowner will not be exposed to competing claims to the limited fund representing more than the value of his or her vessel, the district court may authorize the parties to proceed with the state

court action."); *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.,* 964 F.2d 1571, 1576 (5th Cir.1992) ("Multiple claimants may reduce their claims to the equivalent of a single claim by agreeing and stipulating as to the priority in which the claimants will receive satisfaction against the shipowner from the limited fund."); *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 756 (2d Cir.1988) (explaining that appropriate stipulations "allow claimants who might not otherwise be entitled to do so to proceed with common law actions in other forums"); *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 644 (6th Cir.1982) (explaining that a multiple claims situation no longer exists, and a *concursus* is unnecessary, where the claimants enter priority stipulations); *Universal Towing Co. v. Barrale,* 595 F.2d 414, 420 (8th Cir.1979) (where two claimants stipulate the priority in which their claims will be paid from the limitation fund, the vessel owner is no longer subject to competing claims and therefore a *concursus* would serve no purpose); *In re Garvey Marine, Inc.,* 909 F.Supp. 560, 565 (N.D.Ill.1995) ("The multiplicity of claims will not bar dissolution of the stay order if the claimants, by their stipulations, transform the multiple claims into a single claim for purposes of the exception."); *In re Mohawk Assocs. and Furlough, Inc.,* 897 F.Supp. 906, 911 (D.Md.1995) (same).

### III.

Although no prior case in this Circuit has employed the foregoing stipulation method to transform a multiple-claims-inadequate-fund case into the functional equivalent

of a single claim case, we follow the numerous decisions cited above in doing so today. As an initial matter, we note that the Supreme Court has approved the use of stipulations in other contexts to accomplish similar purposes. In *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957), the Court approved the use of stipulations by multiple claimants to reduce the aggregate amount of their claims to a level below the limitation fund. *See id.* at 149, 77 S.Ct. at 1270-71. The stipulations thus eliminated the need for a *concursus,* because the vessel owner no longer faced the prospect of excess liability. *See id.* at 152, 77 S.Ct. at 1272. Significantly, in allowing the state court action against the vessel owner to proceed, the Court explicitly rejected the argument that the Limitation Act protects the vessel owner against a multiplicity of suits. *See id.* at 153-54, 77 S.Ct. at 1273. Because of the saving to suitors clause, the Court reasoned, the shipowner may not force the damage claimants to litigate their claims in the admiralty court unless a *concursus* is *necessary* to protect the vessel owner's claim of limited liability under the Act. *See id.* at 152-54, 77 S.Ct. at 1272-73.

The *Lake Tankers* case thus establishes that the damage claimants in a multiple-claims-inadequate-fund case may file appropriate stipulations to create an adequate fund case, thereby eliminating the need for a *concursus.* If the damage claimants can make a *concursus* unnecessary by stipulating to the amount of their claims, it follows that they also should be able to make a *concursus* unnecessary by transforming their multiple claims into the functional equivalent of a single claim. This procedure

protects the vessel owner's rights under the Limitation Act, while allowing the damage claimants to pursue their common law remedies—a result consistent with the mandate of the saving to suitors clause. *Cf. Dammers,* 836 F.2d at 760 (explaining that "admiralty courts must strive whenever possible to promote the policies underlying both [the Limitation Act and the saving to suitors clause]").

The decision of the former Fifth Circuit in *Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546 (5th Cir.1960) does not preclude our holding that multiple claimants may create the equivalent of a single claim by entering appropriate stipulations. In that case, four injured claimants sought damages against the vessel owner totalling $558,000, but the amount of the limitation fund was only $500. In an attempt to proceed against the vessel owner and other defendants in state court, two out of the four claimants offered to file protective stipulations. The district court modified its injunction to permit these two claimants to pursue their state court actions, even though the other two claimants, who did not offer to file protective stipulations, sought to recover amounts in excess of the limitation fund. The Fifth Circuit reversed, explaining that the stipulations were inadequate, *inter alia,* because only two out of the four claimants agreed to sign them. *See id.* at 549. After reaching this holding, the *Pershing Auto Rentals* opinion implies that the damage claims in a multiple-claims-inadequate-fund case must *always* be adjudicated in the admiralty court. *See id.* at 549-52. However, we do not believe that such an implication from *Pershing Auto Rentals* is controlling here. In *Pershing Auto Rentals,* only two out of the

four damage claimants agreed to enter protective stipulations; thus, a *concursus* was still necessary to ensure that the vessel owner would not be exposed to competing judgments that could exhaust the limitation fund. Unlike the case at bar, the court was not presented with stipulations which might have transformed the multiple claims into the equivalent of a single claim, thereby eliminating the competition among claimants for the limitation fund.[6]

Finally, we are persuaded by the weight of authority in accepting the argument that multiple claimants may invoke the single claimant exception through appropriate stipulations. Every circuit court of appeals that has expressly addressed this argument has accepted it. *See Gorman v. Cerasia,* 2 F.3d 519, 526 (3d Cir.1993); *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.,* 964 F.2d 1571, 1576 (5th Cir.1992); *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 756 (2d Cir.1988); *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 644 (6th Cir.1982); *Universal Towing Co. v. Barrale,* 595 F.2d 414, 420 (8th Cir.1979).

IV.

With these legal principles in mind, we now address the adequacy of the stipulations filed by appellees, the damage claimants, and approved by the district court in this case. First, we address whether the stipulations have in fact created the functional equivalent of a single claim situation, or whether a

---

[6]The new Fifth Circuit has also distinguished *Pershing Auto Rentals* on this basis. *See Odeco Oil & Gas Co., Drilling Div. v. Bonnette,* 4 F.3d 401, 405 n. 7 (5th Cir.1993).

multiple claims situation still exists.  Only if the stipulations produce the functional equivalent of a single claim may the state court action against BEC proceed.  Second, we address whether the stipulations are otherwise sufficient to protect BEC's right to claim limited liability.

A.

*Have the Stipulations Created the Equivalent of a Single Claim?*

There is no question that the personal injury claim asserted by Kathleen Carletta and the wrongful death claim asserted by the estate of George Myers are separate claims that would ordinarily require a *concursus.*  In addition, "[i]t is ... well settled that the potential for claims for attorneys' fees or costs against a shipowner by a claimant or a third party creates a multiple claimant situation necessitating a *concursus.*"  *Dammers,* 836 F.2d at 756;  *see also Gorman,* 2 F.3d at 528 (same);  *S & E Shipping,* 678 F.2d at 645-46 (same);  *Universal Towing,* 595 F.2d at 419 (same).  However, all of these problems are cured by paragraphs five and six of the amended stipulations, which provide that any claims for attorneys' fees or costs have first priority, that the claim of Myers' estate has second priority, and that Carletta's claim has last priority.

To resolve this case properly, however, we must address two other sets of potential claims:  first, claims that might be asserted by the four minor children surviving Myers;  and second, indemnity or contribution claims that might be asserted by BEC's state court co-defendants.

1. *Potential Claims by Myers' Surviving Minor Children*

The deceased, George Myers, is survived by his mother, Elnora Myers, and his four minor children:  Shante Denise Myers, Tiffany Elnora Margaret Myers, George Edward Myers, Jr., and Julian Caesar Myers.  The Surrogate's Court for New York County, New York appointed Elnora Myers as personal representative of her son's estate.  Acting in this capacity, Elnora Myers executed the amended stipulations at issue in the instant limitation action, and she is the plaintiff in the suit against BEC (and others) in Florida state court for the wrongful death of George Myers.

BEC argues that the personal representative's signature on the amended stipulations is insufficient to protect its rights under the Limitation Act.  According to BEC, this is a multiple claims case because Myers' four minor children have not themselves signed any protective stipulations.  We disagree.  There is only a single claim arising from Myers' death, and it belongs to the personal representative of his estate.  The beneficiaries of the estate, including the minor children, are not authorized to bring independent suits for their individual damages;  rather, they must share in the single judgment, if any, obtained by the personal representative.  This is true under the general maritime law, Florida law, and New York law.  *See* Fl.Stat. § 768.20 (West 1986) ("The [wrongful death] action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death.");  N.Y. Estates, Powers and Trusts Law § 5-4.1 (McKinney 1981) ("The personal representative ... of a decedent who is survived by distributees

may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued."); *see also Futch v. Midland Enter., Inc.,* 471 F.2d 1195, 1195-96 (5th Cir.1973) (holding that the only person who can bring a cause of action for wrongful death under general maritime law is the personal representative of the decedent); *Funchess v. Gulf Stream Apartments,* 611 So.2d 43, 45 (Fla.App. 4 Dist.1992) ("By requiring the personal representative to bring a single action, the [Florida wrongful death] statute eliminates the potential for competing beneficiaries to race to judgment, preferential treatment of one or more beneficiaries in the disposition of their claims and, most significantly, multiple claims and lawsuits against the wrongdoer."); *Mingone v. State,* 100 A.D.2d 897, 474 N.Y.S.2d 557 (2d Dept.1984) (under New York law, holding that "[a] personal representative ... is the only party who is authorized to bring a survival action for personal injuries sustained by the decedent and a wrongful death action to recover the damages sustained by the decedent's distributees on account of his or her death"). Because the result is the same under the general maritime law, Florida law, and New York law, we do not decide which jurisdiction's wrongful death law applies in this case. Rather, we merely conclude that, for purposes of the Limitation Act, the existence of minor children does not transform the wrongful death cause of action in this case from a single claim situation to one involving multiple claims. *Accord In re Midland Enter., Inc.,* 886 F.2d 812, 815-16 (6th

Cir.1989) (holding that a wrongful death action involving a widow and two children is a single claim for purposes of the Limitation Act, because only the personal representative of the estate may bring the claim); *In re Mucho K, Inc.,* 578 F.2d 1156, 1157-58 (5th Cir.1978) (same).

2. *Potential Third Party Claims for Indemnity or Contribution*

In addition to suing BEC in the state court action, appellees have named several other parties as defendants. Because these third party co-defendants could assert cross-claims against BEC for indemnification or contribution, a question under the Limitation Act arises. Does the possibility of such third party claims present a multiple claimant situation necessitating a *concursus?*

There appears to be a split of authority among the federal appellate courts on this issue. In *Universal Towing Co. v. Barrale,* 595 F.2d 414 (8th Cir.1979), the court held that an indemnity claim against the shipowner does not create a multiple claim situation, because "the indemnity claim is merely derivative of the one presented by the claimant." *Id.* at 419. In other words, "[t]he third party ... can only recover what the claimant was entitled to recover from the owner, which cannot exceed the owner's statutory limit." *Id.* In *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636 (6th Cir.1982), the Sixth Circuit followed the reasoning of the Eighth Circuit, and held that indemnity and contribution claims of joint tortfeasors against the shipowner do not create a multiple claims situation, because such claims are "derived from and dependent upon the primary claim

against the shipowner." *Id.* at 645.[7]

More recent opinions, however, have disagreed with the analysis of the Eighth and Sixth Circuits. In *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750 (2d Cir.1988), the Second Circuit held that "the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concursus*." *Id.* at 757. Following *Dammers,* the Third Circuit recently explained why a *concursus* is necessary when there are potential third party claims for indemnification or contribution:

> A multiple claimant situation could arise, for example, if the plaintiffs seek to enforce a state court judgment against the shipowner up to the value of the limitation fund and then seek to recover the remaining amount of the judgment against the shipowner's co-defendants. If the defendants do not sign protective stipulations with the admiralty court, they would not be foreclosed from recovering against the shipowner for contribution, even though his or her liability (assuming a finding of no privity or knowledge) has already been exhausted. It is precisely this kind of competition for the limitation fund that the Act was designed to avoid.

*Gorman v. Cerasia,* 2 F.3d 519, 527 (3d Cir.1993).[8] The Fifth

---

[7]In a separate opinion, Judge Kennedy disagreed with the majority's holding that indemnity and contribution claims from joint tortfeasors are merely derivative of the primary claim against the shipowner. *See id.* at 646-49.

[8]*Gorman* provided a "practical illustration of why a co-defendant's contribution claim creates a multiple claimant situation" by quoting from Judge Kennedy's concurring opinion in *S & E Shipping. See Gorman,* 2 F.3d at 527 n. 8. We do the same:

> The [plaintiffs] could win a large judgment against [the shipowner and its co-defendant] jointly in the state court, say $1,000,000. [The co-defendant] could also win a judgment in state court entitling it to contribution from [the shipowner] for anything it pays the [plaintiffs] in excess of one-half the judgment, or $500,000. Because of the stipulation they have filed with the District court, the [plaintiffs] could collect no more from [the shipowner] than the value of the

Circuit has followed the analysis of the Second and Third Circuits on this issue. *See Odeco Oil & Gas Co., Drilling Div. v. Bonnette,* 74 F.3d 671, 675 (5th Cir.1996) (explaining that potential claims for contribution or indemnity asserted by the vessel owner's co-defendants must be considered separately in assessing whether a *concursus* in the admiralty court is required); *In re Port Arthur Towing Co.,* 42 F.3d 312, 316 (5th Cir.) (per curiam) (same), *cert. denied sub nom. Jarreau v. Port Arthur Towing Co.,* --- U.S. ----, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995).

We find the more recent case law more persuasive. Therefore, to determine whether a multiple-claims-inadequate-fund situation exists, potential claims for indemnity or contribution from the vessel owner's co-defendants must be separately considered. In this case, therefore, we hold that the possibility of claims from BEC's state court co-defendants creates a multiple claims situation.

---

> limitation fund as determined by the District Court. If the fund contains only $250,000 ... then [the co-defendant], jointly and severally liable, would be obligated to pay [the plaintiffs] the unpaid balance of the judgment, or $750,000. Under its right to contribution [the co-defendant] would be entitled to recover from [the shipowner] any excess over $500,000 that it paid the [plaintiffs], or $250,000. Since [the co-defendant] did not stipulate that any state court judgment in its favor would not be res judicata on the limitation question, it would then have a $250,000 claim against [the shipowner] that was not subject to limitation. The result would be that [the shipowner] would have to pay a total of $500,000 on account of the injury ... when under the Limited Liability Act it should only have been liable for the value of the vessel, or $250,000.
>
> This is a clear violation of the Limited Liability Act.
>
> *S & E Shipping,* 678 F.2d at 647 (opinion of Kennedy, J.).

None of BEC's state court co-defendants has entered stipulations protecting BEC's rights under the Limitation Act. The new Fifth Circuit has suggested that *all* potential claimants against the vessel owner, including third parties who might have contribution or indemnity claims, must sign protective stipulations in order for the injured claimants to proceed outside of the limitation action. *See Odeco Oil & Gas Co., Drilling Div. v. Bonnette,* 74 F.3d 671, 675 (5th Cir.1996) (holding that all claimants, including co-defendants who might assert claims for contribution or indemnity, must enter protective stipulations in order for the injunction against state court proceedings to be lifted); *In re Port Arthur Towing Co.,* 42 F.3d 312, 316 (5th Cir.) (per curiam) ("When the aggregate of the damages being sought by all claimants exceeds the value of the concursus, actions in state court cannot proceed unless *all* claimants enter into a stipulation that adequately protects the shipowner.... [A] "claimant' in this context includes a codefendant who is asserting a cross claim for indemnification, costs, and attorneys' fees."), *cert. denied sub nom. Jarreau v. Port Arthur Towing Co.,* --- U.S. ----, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995). The basis for this suggestion (that all potential claimants, including co-defendants, must enter stipulations) is the lack of assurance that the vessel owner's right to claim limited liability will be fully protected.

However, the Second Circuit in *Dammers* has held that the vessel owner can be protected from excess liability at the hands of third parties even if those third parties themselves do not enter any protective stipulations. *See id.* at 758-59. In *Dammers,* the

damage claimants entered the following stipulation:

> in the event there is a judgment or recovery in *any* State Court *actions* in excess of [the limitation fund] whether against the [vessel owners], or any other liable parties who may cross-claim or claim over against the [vessel owners], in no event will [the damage claimants] seek to enforce said excess judgment or recovery insofar as same may expose [the vessel owners] to liability in excess of [the limitation fund] pending the adjudication of Limitation of Liability in the District Court.

*Id.* at 759. Although none of the vessel owners' co-defendants in *Dammers* entered stipulations, the Second Circuit held that the above-quoted stipulation was sufficient to protect the owners from excess liability at the hands of third parties.[9] Thus, the damage claimants were allowed to proceed against the vessel owners in state court.

Here, appellees have attempted to cure the problem presented by the existence of BEC's co-defendants by entering a stipulation similar to the one approved in *Dammers.* Appellees have stipulated as follows:

> 4. That the Respondent/Claimants will not seek to enforce any judgment rendered in any state court, whether against the Petitioner or another person or entity that would be entitled to seek indemnity or contribution from the Petitioner, by way of cross-claim or otherwise, that would expose the Petition [sic] to liability in excess of $40,090.00, until such time as this Court has adjudicated the Petitioner's right to limit that liability.

In our view, this stipulation cures the "multiple claims" problem

---

[9]Although the new Fifth Circuit has suggested that all of the vessel owner's co-defendants must themselves enter stipulations, *see supra,* no Fifth Circuit cases have actually criticized the stipulation approved in *Dammers.* Indeed, in *In re Two "R" Drilling Co.,* 943 F.2d 576, 578 (5th Cir.1991), the new Fifth Circuit upheld a stipulation that mirrors the stipulation approved in *Dammers.*

presented by BEC's state court co-defendants.[10]  These third parties' claims against BEC are based solely on their liability to appellees.  Appellees have promised not to enforce any state court judgment (which would expose BEC to liability in excess of the limit) against *any* party, including BEC's co-defendants, until BEC's right to limitation is adjudicated in the admiralty court. By giving up such claims unless and until limitation is denied, appellees have eliminated the possibility that competing claims will exhaust the limitation fund before the admiralty court has the opportunity to determine whether to grant limited liability to BEC.

For all of the foregoing reasons, we therefore conclude that appellees' stipulations have converted this case into the functional equivalent of a single claim case.

## B.

### *Content of the Stipulations*

Even in a single claimant case, the stipulations must fully protect the vessel owner's rights under the Limitation Act.  In this case, we have three specific concerns with respect to the amended stipulations, which we direct the district court to evaluate on remand.

First, the stipulations must protect the vessel owner's right to litigate its claim to limited liability exclusively in the admiralty court.  In paragraphs one and two of the amended stipulations, appellees have conceded the admiralty court's exclusive jurisdiction over all limitation issues, and in paragraph

---

[10]However, further modifications of this stipulation, as discussed in Part IV B of this opinion, may be necessary to protect the vessel owner.

three, appellees have promised not to seek a determination of those limitation issues in their state court action. Moreover, appellees have consented "to waive any res judicata effect the decisions, rulings or judgments of any state court might have on those [limitation] issues." Our concern is this: in order to protect the vessel owner's statutory rights, this latter stipulation must not be interpreted too narrowly. The damage claimants must agree not only to waive a "res judicata" defense, but must also agree to waive the related defense of issue preclusion with respect to all matters reserved exclusively for determination by the admiralty court. For example, suppose that the state court holds that a single negligent act attributable to BEC caused the accident. The state court's determination that BEC is liable for the accident would be binding in the limitation proceeding, and the admiralty court would determine only whether BEC is entitled to limit that liability. To receive limitation, BEC would have to prove that it lacked privity or knowledge of the negligent act. In litigating this question of BEC's privity or knowledge, appellees may not assert any defense based on issue preclusion. Thus, it is possible that several factual issues that were determined by the state court in resolving the negligence question would have to be relitigated in the admiralty court in resolving the privity or knowledge question. On remand, the district court should determine whether appellees intended to waive the defense of issue preclusion with respect to all limitation issues. If appellees' waiver was not intended to be so broad, then the district court should reinstate the injunction against appellees' state court action. The district

court should also consider whether the language of the amended stipulations needs to be clarified in light of the concerns we have identified in this paragraph.

Second, the stipulations must protect the vessel owner from having to pay damages in excess of the limitation fund, unless and until the admiralty court denies limited liability. In paragraph four of the amended stipulations, appellees have promised not to enforce any judgment in excess of the limitation fund against BEC, or against any co-liable party, "until such time as [the admiralty court] has adjudicated the Petitioner's right to limit that liability." We believe that this stipulation needs clarification, because it does not spell out what happens in the event that BEC's limitation petition is granted. Obviously, if limitation is granted, it would violate the spirit of the Limitation Act for appellees to enforce any judgment that would require BEC to pay damages in excess of the limitation fund. On remand, the stipulation should be clarified accordingly.

Finally, the stipulations must protect the vessel owner from litigation by the damage claimants in *any* forum outside the limitation proceeding. Here, the stipulations refer only to "state court." Because damage claims also may be heard in other fora (e.g., the law side of the federal court), the appellees' stipulations should be amended accordingly.

## V.

For the foregoing reasons, we VACATE the order of the district court lifting the injunction against the state court action, and

REMAND for further proceedings consistent with this opinion.[11]  On remand, if the concerns we have identified in Part IV.B. of this opinion are satisfied, the district court may permit the state court action against BEC to proceed.

VACATED and REMANDED.

---

[11]We note that the concerns prompting this remand are relatively minor and that they probably can be remedied on remand.