United States Court of Appeals,

Eleventh Circuit.

No. 95-2418.

SUZUKI OF ORANGE PARK, INC., as owners of 1993 "Seadoo" Explorer Serial No. ZZN05228L293, in a cause of action of exoneration from, or limitation of, liability, Plaintiff-Appellant,

v.

Steven Scott SHUBERT; Sherry Shubert, Defendants-Appellees.

July 1, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-1132-Civ-J-16), John H. Moore, II, Judge.

Before ANDERSON and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In this admiralty case brought under the Limitation of Vessel Owner's Liability Act, 46 App. U.S.C. § 181 *et seq.* (the "Limitation Act"), appellant Suzuki of Orange Park, Inc. ("Suzuki") challenges an order of the district court denying by summary judgment its petition for exoneration from or limitation of liability. For the reasons set forth herein, we reverse and remand for further proceedings consistent with this opinion.

## I. FACTS

Suzuki is a Florida corporation engaged primarily in the business of selling recreational watercraft. On September 19, 1993, Suzuki staged a customer relations event near Jacksonville, Florida, on the waterfront property of a customer. Suzuki invited numerous other customers, including appellee Steven Shubert, to attend the event. For the purpose of demonstrating the recreational watercraft sold by Suzuki, Jerry Blount, the president

of Suzuki, constructed a slalom course on Julington Creek, a navigable waterway within Florida's territorial waters.

Blount permitted Richard Hall, also a Suzuki customer, to operate a Seadoo Explorer owned by Suzuki ("the Explorer"). Shubert, along with Billy Joe Mann and Ted Nemic, rode in the Explorer as passengers. As Hall guided the Explorer through the slalom course, Shubert fell into the water. It is unknown whether Mann and Nemic pushed Shubert, whether Hall's driving somehow upset Shubert's balance, or whether another explanation for Shubert's fall exists. At the time of Shubert's fall, two other watercraft followed closely behind the Explorer. The first watercraft was a "Bombardier GTX," owned and operated by Roy Daniel. The second watercraft was a "Polaris SL 750," owned by Ronnie Lee Whitaker and operated by Sean Marr. Daniel's watercraft avoided hitting Shubert, but Marr's watercraft struck Shubert, causing him to suffer serious and permanent injuries.

## II. PROCEDURAL HISTORY

On June 24, 1994, Shubert and his wife, Sherry, filed a complaint in Florida state court against Suzuki, Blount, Hall, Mann, Nemic, Daniel, and Marr. The complaint's allegations against Suzuki, the vessel owner, are relevant to Suzuki's petition for limited liability. In summary, the complaint alleges that Suzuki negligently supervised the demonstration of the Explorer. On November 22, 1994, Suzuki instituted this limitation action in the United States District Court for the Middle District of Florida.

Upon approving Suzuki's offer of security and its *ad interim* stipulation of $9,000 as the value of the Explorer, the district

court enjoined anyone who had claims arising out of the accident from proceeding against Suzuki in any other forum. *See generally* 46 App. U.S.C. § 185; Fed.R.Civ.P. Supplemental Rule F. The court issued a notice to the Shuberts, admonishing them to file claims against Suzuki in the limitation proceeding, or else be defaulted. A copy of the notice was published in a newspaper for purposes of informing other potential claimants. On February 6, 1995, the Shuberts filed a timely answer and claim for damages in excess of the stipulated value of the Explorer, with Shubert seeking to recover for his personal injuries and Shubert's wife seeking to recover for loss of consortium. Apparently, no one else filed timely claims in the limitation action.

The Shuberts also moved for summary judgment, contending that Suzuki was not entitled to limitation for accidents arising from the direct negligence of its president, Blount. The district court agreed with the Shuberts and entered final summary judgment, denying Suzuki limitation of liability on March 3, 1995. This appeal followed.

### III. DISCUSSION

The Limitation Act limits a vessel owner's liability for any damages arising from a maritime accident to the value of the vessel and its freight, provided that the accident occurred without such owner's "privity or knowledge." 46 App. U.S.C. § 183(a).[1] In a

---

[1]46 App. U.S.C. § 183(a) provides:

> The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for

typical limitation proceeding, the admiralty court determines whether the vessel owner is entitled to limited liability by undertaking the following two-step analysis:

> First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.

*Hercules Carriers, Inc. v. Claimant State of Florida*, 768 F.2d 1558, 1563-64 (11th Cir.1985) (quoting *Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir.1976)). The damage claimants bear the initial burden of establishing liability (i.e., negligence or unseaworthiness), and the shipowner then bears the burden of establishing the lack of privity or knowledge. *Id.* If limited liability is granted, the admiralty court oversees the distribution of the limitation fund among the damage claimants. *See generally In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 755 (2d Cir.1988).

A vessel owner's claim to limited liability must be adjudicated exclusively in the admiralty court, which sits without a jury. *See Ex Parte Green,* 286 U.S. 437, 439-40, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932); *Newton v. Shipman,* 718 F.2d 959, 962 (9th Cir.1983) (per curiam). However, the same statute that grants the federal courts exclusive admiralty and maritime jurisdiction saves to suitors "all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The "saving to suitors" clause of

---

> any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

§ 1333(1) embodies a presumption in favor of jury trials and other common law remedies in the forum of the damage claimant's choice. *See Odeco Oil & Gas, Drilling Div. v. Bonnette,* 74 F.3d 671, 674 (5th Cir.1996). To reconcile the tension between the exclusive admiralty jurisdiction over Limitation Act claims and the presumption favoring jury trials under the saving to suitors clause, courts have identified a few circumstances under which the damage claimants may litigate the issues of liability *vel non,* as well as damages, in their chosen fora. *See In re Beiswenger Ent. Corp.,* No. 95-2272, slip. op. at ----, --- F.3d ----, ---- (11th Cir.1996).[2] Under these exceptions, if the vessel owner is held liable in the damage claimant's chosen forum for an amount exceeding the limitation fund, the parties must return to the admiralty court to litigate the vessel owner's privity or knowledge.

Another method employed to preserve the damage claimants' saving to suitors clause rights was recognized in *Fecht v. Makowski,* 406 F.2d 721 (5th Cir.1969).[3] In that case, which

---

[2]The first exception to exclusive admiralty jurisdiction arises where the limitation fund exceeds the aggregate amount of all the possible claims against the vessel owner. *See Lake Tankers Corp. v. Henn,* 354 U.S. 147, 152-53, 77 S.Ct. 1269, 1272-73, 1 L.Ed.2d 1246 (1957). The second exception exists where there is only one claim to the limitation fund, and the single claimant enters certain stipulations designed to protect the vessel owner's rights under the Limitation Act. *See In re Mucho K, Inc.,* 578 F.2d 1156, 1158 (5th Cir.1978). In *In re Beiswenger Ent. Corp.,* No. 95-2272, slip. op. at ----, --- F.3d ----, ---- (11th Cir.1996), this Circuit recently held that multiple claimants may enter appropriate stipulations to create the functional equivalent of the single claimant exception.

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to

involved multiple claims to an inadequate limitation fund, the former Fifth Circuit held that the damage claimants must be allowed to litigate the vessel owner's negligence in state court, "where it is apparent that limitation cannot be granted." *Id.* at 722. *Fecht* involved an accident in which one passenger was killed and another seriously injured when a pleasure boat struck a submerged object. The boat's owner, who was operating the boat at the time of the accident, filed a limitation complaint in federal district court. The owner conceded that limitation was impossible, because "when an owner is in control of and operating his pleasure craft he has privity or knowledge with respect to its operation." *Id.* at 722; *see also id.* at 722 n. 4. Nevertheless, the admiralty court, over the objections of the damage claimants, conducted a full trial on the liability issues. Concluding that the boat was seaworthy and its operator free from fault, the court exonerated the boat owner. *See id.* On appeal, the damage claimants argued that the admiralty court should have allowed them to litigate the boat owner's negligence in state court, while the boat owner argued that he was entitled to litigate his right to exoneration from liability in the admiralty court. The Fifth Circuit agreed with the damage claimants, and reversed the lower court's grant of exoneration:

> [W]here no limitation is possible the damage claimants are entitled to have the injunction against other actions dissolved, so that they may, if they wish, proceed in a common law forum as they are entitled to do under the saving to suitors clause. 28 U.S.C. § 1333.... The reason for enjoining state court suits is to distribute effectively a limited fund in a single proceeding, not to "transform the [Limitations] Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their

the close of business on September 30, 1981. *Id.* at 1209.

> common law rights." *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 152, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246, 1251 (1957). Where no grant of limitation is possible, the basis for granting exoneration vanishes.

*Id.* at 722-23. Thus, *Fecht* establishes that the admiralty court may decide the privity or knowledge issue without first deciding the liability issue—at least where the boat owner concedes privity or knowledge, or where it is otherwise impossible under any set of circumstances for the vessel owner to demonstrate the absence of privity or knowledge. *See also Joyce v. Joyce,* 975 F.2d 379, 385 (7th Cir.1992) (where sole allegation against boat owner is negligently entrusting the boat to its operator, the boat owner is necessarily ineligible for limited liability because privity or knowledge is an element of the tort of negligent entrustment).

With the principle of *Fecht* in mind, we turn to the privity or knowledge issue in this case. If it is truly impossible under any set of circumstances for Suzuki to establish its lack of privity or knowledge, then the limitation action should be dismissed, and the Shuberts should be allowed to try liability and damages issues in state court.

The statutory concept of "privity or knowledge" is somewhat elusive, although the purpose of the Limitation Act provides some guidance as to its proper application. *See Gibboney v. Wright,* 517 F.2d 1054, 1057 (5th Cir.1975) ("What is meant by privity or knowledge is not easy to pin down."); *Fecht,* 406 F.2d at 722 (citing cases for the proposition that "the meaning of "privity or knowledge' has been the subject of considerable speculation"). The Limitation Act was designed to encourage investment in the shipping industry by limiting the physically remote shipowner's vicarious

liability for the negligence of his or her water-borne servants. *See Tittle v. Aldacosta,* 544 F.2d 752, 756 (5th Cir.1977). Thus, consistent with the statutory purpose to protect innocent investors, "privity or knowledge" generally refers to the vessel owner's personal participation in, or actual knowledge of, the specific acts of negligence or conditions of unseaworthiness which caused or contributed to the accident. *See Coryell v. Phipps,* 317 U.S. 406, 411, 63 S.Ct. 291, 293, 87 L.Ed. 363 (1943); *American Car & Foundry Co. v. Brassert,* 289 U.S. 261, 264, 53 S.Ct. 618, 619, 77 L.Ed. 1162 (1933) (because the Limitation Act was designed to protect the innocent investor, the vessel owner remains liable "[f]or his own fault, neglect and contracts"). Over the years, however, the courts have broadened privity or knowledge to include constructive knowledge—what the vessel owner could have discovered through reasonable inquiry. *See, e.g., In re Oil Spill by the AMOCO CADIZ,* 954 F.2d 1279, 1303 (7th Cir.1992) ("The recent judicial trend has been to enlarge the scope of activities within the "privity or knowledge' of the shipowner, including ... requiring shipowners to exercise an ever-increasing degree of supervision and inspection."); *Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1564, 1576 (11th Cir.1985) ("[P]rivity or knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the requisite knowledge."); *McNeil v. Lehigh Valley R.R.,* 387 F.2d 623, 624 (2d Cir.1967) ("Negligent failure to discover constitutes privity and knowledge within the meaning of the statute."), *cert. denied sub nom. Lehigh Valley R. Co. v. Wm.*

*Spencer & Son Corp.,* 390 U.S. 1040, 88 S.Ct. 1638, 20 L.Ed.2d 302 (1968).

The shipowner's privity or knowledge is not measured against every fact or act regarding the accident; rather, privity or knowledge is measured against the specific negligent acts or unseaworthy conditions that actually caused or contributed to the accident. *Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir.1976) (after determining what acts of negligence or conditions of unseaworthiness caused the accident, "the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness"); *Avera v. Florida Towing Corp.,* 322 F.2d 155, 158 (5th Cir.1963) ("For the problem always exists ... of determining just what specific acts of negligence were committed against which the admiralty court subsequently applies the privity-knowledge yardstick."); *see also Deslions v. La Compagnie Generale Transatlantique,* 210 U.S. 95, 122, 28 S.Ct. 664, 673, 52 L.Ed. 973 (1908) ("[M]ere negligence, pure and simple, in and of itself does not necessarily establish the existence on the part of the owner of a vessel of privity and knowledge within the meaning of the statute.").

In the context of a corporate shipowner, the privity and knowledge of "corporate managers vested with discretionary authority" is attributed to the corporation. *Great Lakes Dredge & Dock Co. v. City of Chicago,* 3 F.3d 225, 231 (7th Cir.1993) (distinguishing "managerial" employees from "purely ministerial" employees for purposes of attributing privity or knowledge to the corporation), *aff'd sub nom. Jerome B. Grubart, Inc. v. Great Lakes*

*Dredge & Dock Co.,* --- U.S. ----, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *see also Coryell v. Phipps,* 317 U.S. 406, 410-11, 63 S.Ct. 291, 293, 87 L.Ed. 363 (1943) (explaining that a corporate shipowner may not limit its liability where "the negligence is that of an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred"); *Craig v. Continental Ins. Co.,* 141 U.S. 638, 646, 12 S.Ct. 97, 99, 35 L.Ed. 886 (1891) ("When the owner is a corporation, the privity or knowledge must be that of the managing officers of the corporation."); *Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1574 (11th Cir.1985) (privity and knowledge of a managing agent, officer or supervising employee, including supervisory shoreside personnel, is attributable to the corporation); *Continental Oil Co. v. Bonanza Corp.,* 706 F.2d 1365, 1376 (5th Cir.1983) (en banc) (explaining that the attribution of a managing agent's privity or knowledge to the corporation depends upon the scope of such managing agent's authority). In the instant case, therefore, the privity and knowledge of Blount, Suzuki's president, clearly constitutes the privity and knowledge of Suzuki.

In the case at bar, the district court applied *Fecht* and held that limitation is impossible. The court expressly refrained from deciding what acts of negligence or conditions of unseaworthiness caused the accident, leaving those issues open for determination by the state court jury. According to the district court, if the state court holds Suzuki liable for the accident, Suzuki's liability would derive solely from Blount's actions. Because

Blount necessarily has privity and knowledge of his own actions, and because Blount's privity and knowledge is the same as Suzuki's, the district court denied Suzuki's limitation petition.

We do not believe that the district court's disposition of this case adequately protects Suzuki's rights under the Limitation Act. It is true that Suzuki necessarily possesses privity and knowledge with respect to all of the acts of Blount. If Suzuki could be held vicariously liable only through Blount, then no doubt limited liability would be impossible. At this stage of the proceedings, however, we are reluctant to assume that Suzuki can be held vicariously liable only through Blount.[4] Our reluctance finds support in this court's decision in *In re M/V SUNSHINE, II,* 808 F.2d 762, 765 (11th Cir.1987). In that case, a pleasure boat owner, who was operating his boat when it collided with another boat, filed a petition for limited liability. *See id.* at 763. Following *Fecht* and explaining that an owner-operator may not ever limit his liability, the district court dismissed the limitation petition on a motion to dismiss. This court reversed, holding that the district court should not have resolved the privity or knowledge issue without further factual development. We stated:

> [I]n most circumstances negligence in operation will be sufficiently connected to the owner on board his own small vessel and operating it that he will be found to have privity or knowledge, but this common sense recognition of how the facts will usually work out is not an ineluctable doctrine to be applied at the pleading stage, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to rational decision.

---

[4]In granting summary judgment against Suzuki, the district court considered only the pleadings filed in the limitation proceeding, the Shuberts' state court complaint, and a deposition of Blount.

*Id.* at 765.

In the instant case, we can envision a set of circumstances under which Suzuki could be exposed to liability based on the actions of someone other than Blount. For example, suppose that the state court finds that Hall and Marr both caused the accident by operating their watercraft negligently, and that Blount and Shubert are free from contributory fault. If Hall was acting as Suzuki's agent at the time of the accident, the court could hold Suzuki vicariously liable under principles of *respondeat superior.*[5] Despite this imputation of Hall's negligence to Suzuki, Suzuki may lack privity or knowledge with respect to Hall's negligence.[6] This scenario illustrates why Suzuki's rights under the Limitation Act may be in jeopardy. It remains possible that Suzuki will have to pay damages exceeding the limitation fund for acts occurring without its privity or knowledge. Accordingly, we hold that the possibility of vicarious liability through parties other than

---

[5]Although it appears that Hall is not an employee of Suzuki, it would be premature to say that Hall was not acting on Suzuki's behalf on the day of the accident.

[6]If Hall is not a managerial employee of Suzuki, Hall's privity or knowledge would not automatically be attributed to Suzuki. This is not to say, however, that if Hall caused the accident, Suzuki could always demonstrate a lack of privity or knowledge. For example, in *Tittle v. Aldacosta,* 544 F.2d 752, 756-57 (5th Cir.1977), the court attributed the privity or knowledge of a ship's mate to the shipowner, where the shipowner was on board the ship at the time of the accident, and exercised "direct command" over the negligent mate. "Unlike owners who are remote physically and operationally, [the owner present at the accident] cannot rightfully claim that his investment in a seagoing enterprise is imperiled by actions of those over whom he can exercise no immediate control." *Id.* Accordingly, "where the operational command of the whole enterprise is in the hands of the owner then present, he is charged with privity and knowledge on usual principles for the negligent acts of those under his effective command." *Id.*

Blount precludes summary judgment. A genuine issue of material fact as to Suzuki's lack of privity or knowledge still exists.

Although the Shuberts emphasize that their state court complaint does not allege that Suzuki is vicariously liable for Hall's conduct, or for anyone's conduct other than Blount's, the Shuberts cannot ensure that Suzuki will be held vicariously liable only through Blount. First, the Shuberts have not executed any stipulation in the admiralty court binding them to hold Suzuki vicariously liable for Blount's actions only. Without such a stipulation, the Shuberts presumably could amend their state court pleadings to allege that Suzuki is vicariously liable through someone other than Blount. Second, even if the Shuberts agree not to pursue vicarious liability through anyone but Blount, the Shuberts' amended state court complaint names Blount, Hall, Mann, Nemic, Daniel, and Marr as defendants (along with Suzuki). If deemed negligent, these parties could file cross-claims against Suzuki for indemnification or contribution, alleging that Suzuki is vicariously liable through someone other than Blount (such as Hall). *Cf. In re Beiswenger Ent. Corp.,* No. 95-2272, slip. op. at ----, --- F.3d ----, ---- (11th Cir.1996) (holding that, for purposes of determining whether a multiple-claims-inadequate-fund situation exists, potential claims for indemnity or contribution from the vessel owner's co-defendants must be considered separately from the damage claimant's primary claim against the vessel owner). If Suzuki lacks privity or knowledge with respect to Hall's actions, *see supra,* then Suzuki's rights under the Limitation Act will have been frustrated.

Our decision, reversing summary judgment on the privity or knowledge issue, is not necessarily fatal to the Shuberts' ability to try liability and damages issues against Suzuki in state court. *See, e.g., Beiswenger,* slip. op. at ----, --- F.3d at ---- (allowing damage claimants in a multiple-claims-inadequate-fund case to proceed in state court upon filing of appropriate stipulations). We leave to the parties and the district court on remand the matter of the feasibility of appropriate protective stipulations, and the fashioning thereof.

## IV. CONCLUSION

We REVERSE the district court's order granting summary judgment against the appellant, and REMAND this action to the district court for proceedings consistent with this opinion.