**In the Matter of: COMPLAINT OF OFFSHORE MARINE TOWING, INC. as owner of Vessel "Tow Boat U.S. No. 1" a/k/a "OMT # 1" hull number JCA 31397J900, her engines, etc. Petitioner, in a Cause for Exoneration from or Limitation of Liability**

**Blanche Duncan, Claimant.**

**No. 02–60474–CIV.**

United States District Court, S.D. Florida.

Feb. 25, 2004.

cussed above, the court finds that Hobson and TSU were not in a custodial relationship.

Andrew Warren Anderson, David Neal Gambach, Houck Hamilton & Anderson, Miami, for Offshore Marine Towing, Inc., as the owner of the vessel "Tow Boat U.S. No. 1 a/k/a OMT #1", hull number JCA31397J900 her engine, tackle, appurtenances etc., plaintiff.

Eric McKeever, Pompano Beach, Pro se.

Michael William McLeod, Seiden Alder & Matthewman, Boca Raton, Mark F. Dickson, Fort Lauderdale, Blanche Duncan, Pro se, Pompano Beach, for Blanche Duncan, defendant.

**OMNIBUS ORDER ON PENDING MOTIONS ORDER LIFTING INJUNCTION AS TO CLAIMANT BLANCHE DUNCAN ORDER STAYING CASE PENDING STATE COURT ACTION ORDER CLOSING CASE FOR ADMINISTRATIVE PURPOSES WHILE CASE IS STAYED**

MARRA, District Judge.

THIS CAUSE is before the Court upon Petitioner Offshore Marine's Motion to Strike Claimant's Demand for Jury Trial [DE 46], Petitioner's Motion for Summary Judgment on the Claims for Emotional Distress [DE 65], Petitioner's Motion for Summary Judgment to Establish Limitation [DE 66] (withdrawn at DE 121), Claimant's Motion to Strike or Continue Motions for Summary Judgment [DE 75], Claimant's Motion to Strike Exhibits attached to Motions for Summary Judgment [DE 82], Claimant's Motion to Dismiss, Stay or Lift Injunction [DE 82], Petitioner's Renewed Motion to Establish Limitation [DE 122], Petitioner's Motion for an Order to Establish Amount of Limitation Fund [DE 123], Claimant's Motion for Oral Argument on her Motion to Dismiss, Stay or Lift Injunction [DE 125], Claimant's Motion to Strike or Continue Petitioner's Motion to Establish Limitation [DE 127], Claimant's Motion to Strike Exhibits [DE 130] and Petitioner's Motion for Extension of Time [DE 137]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

## I. PROCEDURAL BACKGROUND

Petitioner Offshore Marine, Inc. ("Petitioner" or "Offshore Marine") initiated this action by filing a petition for exoneration or limitation of liability pursuant to 46 U.S.C.App. section 181 *et seq.* This Court (Moore, J.) granted an injunction against any other lawsuits against the Petitioner, including state court lawsuits [DE 9]. Blanche Duncan ("Duncan" or "Claimant") filed an answer and a claim. The parties have engaged in discovery and filed various motions, including Claimant's motion to dismiss the petition or stay this action and lift the injunction against her pursuit of a state court damages action. Petitioner seeks summary judgment on whether it is entitled to limitation of damages, on the

amount of the limitations fund, and whether Claimant has met the legal standard for recovering emotional damages. Claimant has sought to continue the hearing of these motions for summary judgment.

## II. FACTUAL BACKGROUND

This action arose out of an incident off the shore of Broward County, Florida on the night of September 23, 2001. Duncan and non-party Eric McKeever were on a night-time fishing trip on their boat, the M/V Big Daddy, a 22 foot Seabird type of vessel, when their boat malfunctioned. McKeever, a member of Vessel Assist, had Duncan use their cellular telephone to call for assistance around 1:00am on September 24, 2001 (Vessel Assist is the maritime equivalent of roadside assistance programs for motor vehicle owners). Duncan was connected with Petitioner Offshore Marine, Inc., a company that provided marine assistance by contract with Vessel Assist. There is a dispute of fact regarding whether Duncan spoke with Larry Acheson, a corporate officer and operational supervisor for Offshore Marine, or with another employee of Offshore Marine. About an hour after the initial notification by Duncan to Vessel Assist, during which time the Big Daddy drifted towards shore, Offshore Marine sent one of its vessels, Tug Boat U.S. No. 1, operated by Captain Kevin Collins, to assist Duncan and McKeever. Upon meeting McKeever and Duncan, Collins explained the contract rate structure, and then proceeded to tow the Big Daddy toward its home pier at a safe speed of ten knots or less.

Although the above facts are largely not in dispute, the parties' descriptions of events from this point on are in dispute. Because this matter is before the Court upon Petitioner's motions for summary judgment, the Court will not determine whose recollections are correct, but will take the facts in the light most favorable to Claimant. When Tug Boat No. 1, towing the Big Daddy, was ten minutes from the pier, Collins overheard a distress call on the radio. Petitioner's owner, Acheson, also heard the distress call, though it was breaking up. The Coast Guard then became involved.

Communications then proceeded between the Coast Guard, Collins, Acheson, and the distressed vehicle. The Coast Guard had a helicopter available, but stated that any assistance by Offshore Marine would be appreciated. Collins decided to turn around and head out toward the vessel requesting assistance. It is disputed whether Collins made this decision on his own without direction from Acheson. It is also disputed whether Acheson told Collins to assist the Coast Guard before dropping off the Big Daddy. It is clear that Acheson was Collins' superior officer in the situation and had the authority to order Collins to drop off the Big Daddy before heading out to the other vessel.

Collins then proceeded at twenty knots away from shore toward the vessel requesting immediate assistance. Duncan and McKeever remained on board the Big Daddy without being notified of the decision to divert them back offshore other than being told to "hold on." While Collins searched for the vessel requesting assistance, the Tug Boat sped up, slowed down, and then sped up again. As a result, Duncan alleges she injured her back. The Tug Boat eventually arrived at the vessel in distress, which was operated by Matthew Jaeger. A Coast Guard helicopter requested Collins' assistance in getting the bleeding Matt Jaeger into the helicopter's basket in order for Jaeger to be lifted up to the helicopter for medical treatment. Collins got Jaeger into the basket. During this operation, the Big Daddy was within one boat length's of the Tug Boat and the Jaeger vessel. As the helicopter

basket swung over it, some blood spilled onto the Big Daddy.

After the helicopter left, Collins proceeded to secure the Jaeger vessel and the Big Daddy in an effort to tow both vessels to shore. There is some dispute about whether it was against Offshore Marine's policy to tow two boats at once. Collins succeeded in rigging the tow line to pull both boats toward shore. At some point near shore, a second Offshore Marine tug boat, operated by Captain David Hoshko, met Collins and proceeded to transfer the tow of the Big Daddy to Hoshko's vessel. Hoshko and Collins engaged in some argument about towing procedures. Hoshko then completed the tow of the Big Daddy, dropping Duncan and McKeever at their home pier. Hoshko completed the paperwork, charging the Big Daddy for four hours of tow time, from the time Collins first responded to the call by starting out on Tug Boat No. 1, to the time Hoshko dropped them off, including the time Collins spent rescuing Matthew Jaeger and his vessel.

In her claim, Duncan asserts that in addition to physical injuries to her neck and back that occurred during the tow operation, she suffered emotional distress from the fast dash out to save Matthew Jaeger and the spilling of blood onto her vessel. She alleges that Offshore Marine was negligent in its operation of its tow of the Big Daddy.

McKeever initially filed a response to the Petition that was considered a claim [DE 8]. McKeever then dismissed his claim without prejudice [DE 34]. McKeever later filed a statement that he has no intention of refiling a claim, and that he only filed a response to the Petition because he thought the lawsuit was seeking a finding that McKeever was negligent. See Exhibit D to Claimant's Reply in Support of Motion to Dismiss, Stay, and/or Lift Injunction [DE 113]. In addition, a final default judgment was entered as to Matthew Jaeger and anyone else who failed to file a claim regarding this incident, except for Duncan and McKeever [DE 53].

## III. DISCUSSION

This case presents a clash between the Constitution's grant of admiralty jurisdiction to federal courts and the constitutional right to a jury trial. Decisions of the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit, however, have created rules to resolve these conflicting mandates, preserving the shipowner's right to have a federal court decide liability limitations issues, while preserving a claimant's right to a jury trial in state court on a damages claim.

The particular clash of competing mandates arises from the Judiciary Act of 1789, which codified the Constitution's grant of admiralty jurisdiction to the federal courts. In this Act, as now codified, Congress gave exclusive jurisdiction over admiralty actions to the federal courts, but created an exception by "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Thus, the question arises whether Duncan's claim falls under this exception to exclusive federal jurisdiction of admiralty claims and whether her right to a state court jury trial on her negligence claim has been "saved." The answer to this question is "yes," if Duncan meets certain conditions and makes certain stipulations.

### 1. *Procedural Progression of Limitations Case*

■ Before discussing the particular stipulations that are necessary for Duncan to proceed in state court, the Court addresses the procedure in a limitations case.

In general, the federal court follows a two-step analysis to determine whether a shipowner is entitled to limit his liability: First, the court determines what acts of negligence or conditions of unseaworthiness caused the accident, and second, the court determines whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness. *Suzuki of Orange Park, Inc. v. Shubert,* 86 F.3d 1060, 1062 (11th Cir. 1996) (quoting *Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1563–64 (11th Cir.1985)). The claimant bears the burden of establishing liability by negligence or unseaworthiness, while the shipowner then has the burden of showing lack of knowledge or privity. *Id.* at 1062–63. If the shipowner meets its burden, then limited liability is granted, and the Court must determine the amount of the fund[1] and oversee distribution to claimants. *Id.* at 1063.

### 2. *Single Claimant Rule*

The courts have reconciled the tension between the exclusive admiralty jurisdiction over Limitation Act claims and the presumption favoring jury trials under the saving to suitors clause by identifying a few circumstances in which a damage claimant may litigate issues of liability and damages in his chosen forum. *Beiswenger Enterprises Corp. v. Carletta,* 86 F.3d 1032, 1037 (11th Cir.1996); *Suzuki,* 86 F.3d at 1060. One of those circumstances exists when there is only one claimant. *Id.*

■ Claimant Duncan argues that she meets the conditions for allowing her to proceed in state court as she is the only claimant in this case. Petitioner argues that Eric McKeever is a potential claimant

as his claim was dismissed without prejudice, and, he was specifically not included in the final order of default of non-claimants. However, as noted above, Claimant has submitted a statement from McKeever with her reply in which he reiterates that he is not making a claim for damages from the incident which forms the subject matter of this case. The Court is satisfied that McKeever has waived any claim for damages that he might have had. McKeever is therefore no longer a potential claimant to this liability action. Hence, Duncan is the only claimant in this action, and given the stipulations described below, she may litigate the issues of liability and damages in state court.

### 3. *Issues for Federal Court to Decide*

■ Petitioner urges this Court to proceed to consider its motions for summary judgment to establish a limitation of liability and the amount of a limitation fund even if Claimant is allowed to pursue her negligence action in state court. As previously discussed, a shipowner has the burden of showing lack of knowledge or privity of the specific acts of negligence which caused the accident. *Hercules,* 768 F.2d at 1574. The shipowner's knowledge need not be actual knowledge, but may be constructive knowledge, including whether the owner "could have and should have obtained the information by reasonable inquiry or inspection." *Id.* at 1577; *Suzuki,* 86 F.3d at 1064. For a corporate shipowner, the privity and knowledge of a manager or supervisor, including shoreside managers, of the operation out of which the injury occurred, will be imputed to the corporation. *Suzuki* at 1065; *Hercules* at 1574–76; *American Dredging Company v. Lambert,* 81 F.3d 127, 130 (11th Cir.1996).

---

1. The Limited Liability Act provides that the "liability of the owner of any vessel ... for any loss, damage or injury by collision... incurred without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel...." 46 U.S.C.App. § 182 (West 2003).

This Court concludes that it cannot determine Petitioner's knowledge or privity of the negligence without an initial determination by the trier of fact as to what acts of negligence, if any, occurred. Even if such negligence was committed solely by Collins, there are disputed issues of fact regarding Acheson's knowledge of those actions before they occurred. Therefore, this Court cannot conclude as a matter of law that Petitioner has met its burden of showing that it did not have knowledge or privity of the alleged acts of negligence.[2]

### 4. Content of Stipulations

Having concluded that Duncan may invoke the single claimant rule, the Court must decide whether it is appropriate in this case. In *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001), the United States Supreme Court approved the lifting of the injunction against a state court negligence action when a claimant makes stipulations that protect the vessel owner's right to seek limitation in federal court. The Eleventh Circuit had approved such a procedure in *Beiswenger*, 86 F.3d at 1037. Both decisions recognize that in a single claimant situation, given certain stipulations by the claimant, the injunction should be lifted.

The required stipulations must protect the vessel owner's right to litigate its claim to limited liability exclusively in federal court. Duncan has stipulated to this right, and she has agreed not to seek a determination of the liability limitation issue nor the amount of any limitations fund in any other forum. Duncan has also stipulated to waive any res judicata or issue preclusion effect the decisions of any other forum might have on these issues. Finally, Duncan has stipulated not to enforce

any state court judgment until the Court has adjudicated the Petitioner's right to limit that liability, nor will she seek to enforce any judgment that would require payment of damages in excess of the limitations fund determined by this Court. *See* Section II (pages 3–4) of Claimant's Motion to Dismiss, Stay and/or Lift the Injunction [DE 82].

The Court concludes that Duncan's stipulations meet the requirements of the Eleventh Circuit. *Beiswenger*, 86 F.3d at 1044. Therefore, the Court will lift the injunction and allow Duncan to file a state court negligence action against Offshore Marine, Inc., pursuant to the saving to suitors clause in 28 U.S.C. § 1333, and conditioned upon the stipulations made by Claimant Duncan. The Court will stay this action pending the determination by the state court of the issues of negligence and damages.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Offshore Marine's Motion to Strike Claimant's Demand for Jury Trial [DE 46] is hereby **GRANTED in part,** as to the federal limitation claim, but **DENIED** as to the state court damages action;

2. Petitioner's Motion for Summary Judgment on the Claims for Emotional Distress [DE 65] is hereby **DENIED, without prejudice** to renewal in state court;

3. Petitioner's Motion for Summary Judgment to Establish Limitation [DE 66] is hereby **DENIED as moot,** given its withdrawal at DE 121;

---

**2.** The Court also concludes that the issue of whether Claimant has met the legal standard for emotional distress damages should be de-

cided by the state court. This is an issue of Florida law that does not relate to the limitations issues to be determined by this Court.

4. Claimant's Motion to Strike Motions for Summary Judgment [DE 75–1] is hereby **DENIED**;

5. Claimant's Motion to Continue Motions for Summary Judgment [DE 75–2] is hereby **GRANTED**;

6. Claimant's Motion to Strike Exhibits attached to Motions for Summary Judgment [DE 76] is hereby **DENIED as moot**;

7. Claimant's Motion to Dismiss [DE 82–1] is hereby **DENIED**;

8. Claimant's Motion to Stay and/or Lift Injunction [DE 82–2] is hereby **GRANTED**, as limited by the stipulations made by Claimant;

9. The injunction previously entered in this case [DE 9] is hereby lifted as to Claimant Blanche Duncan, who may proceed in Florida state court with an action for damages against Petitioner, as conditioned by her stipulations discussed above;

10. Claimant's Motion for Oral Argument on her Motion to Dismiss, Stay or Lift Injunction [DE 125] is hereby **DENIED as moot**;

11. Claimant's Motion to Strike Petitioner's Motion to Establish Limitation [DE 127–1] is hereby **DENIED**;

12. Claimant's Motion to Continue Petitioner's Motion to Establish Limitation [DE 127–2] is hereby **GRANTED**;

13. Petitioner's Renewed Motion to Establish Limitation [DE 122] is hereby **DENIED, without prejudice,** pending resolution of a state court action;

14. Petitioner's Motion for an Order to Establish Amount of Limitation Fund [DE 123], is hereby **DENIED, without prejudice,** pending resolution of a state court action;

15. Claimant's Motions to Strike Exhibits [DE's 90 and 130] are hereby **DENIED, without prejudice;**

16. Petitioner's Motion for Extension of Time [DE 137] is hereby **GRANTED,** *nunc pro tunc;*

17. This case is hereby **STAYED,** pending the parties' notification to this Court that a judgment has been reached in state court, and the limitations issued have become ripe for determination by this Court;

18. During this period that the case is stayed, the Clerk may close this case for administrative purposes. The case shall be reopened upon the parties' notification that the limitations issue has become ripe for determination by this Court.